Jason B. Lattimore
**The Law Office Of**
**JASON B. LATTIMORE, ESQ. LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 998-7477
Facsimile:  (973) 264-1159

*Attorneys for Plaintiff,*
*Interlink Products International, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERLINK PRODUCTS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> F & W TRADING LLC, <br><br> Defendant. | Case No: 3:15-cv-01340-MAS-DEA <br> CIVIL ACTION <br><br><br> **AMENDED COMPLAINT &** <br> **JURY TRIAL DEMAND** |

Plaintiff, Interlink Products International, Inc. (hereinafter "Interlink" or "Plaintiff"), by and through its undersigned attorney, hereby complains of Defendant, F & W Trading LLC ("Defendant"), as follows:

### THE PARTIES

1.      Plaintiff is a New Jersey corporation with its principal place of business at 1315 East Elizabeth Avenue, Linden, NJ 07036.

2.     On information and belief, Defendant is a New Jersey Limited Liability Company with its principal place of business at 1 Havenwood Court, Unit 504A, Lakewood, New Jersey 08701.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the claims alleged pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331.  The Court also has jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims alleged are so related to the claims over which the Court has original jurisdiction that they form part of the same case.

4.     This Court has personal jurisdiction over Defendant in that it does business regularly in this district.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## NATURE OF THE CLAIMS

6.     This case arises out of Defendant's false advertising of its illegal products, and infringement of Interlink's trade dress and trademarks.  In order to gain access to an exclusive online retail platform and to deceive consumers into purchasing its products in competition with Interlink, Defendant has misrepresented that its products comply with applicable laws when, in fact, they violate a host of statutory and regulatory provisions.  Defendant has also misrepresented the nature and qualities of its products by using images of Interlink's products to promote and sell Defendant's products.  Defendant further violated Interlink's rights and employed misrepresentations in the promotion of its products by adopting a trademark that is confusingly similar to federally registered marks used by Interlink, by misrepresenting that its infringing trademark is federally registered when, in fact, it is not, and by copying Interlinks distinctive trade dress.  Interlink asserts claims against Defendant for false advertising under the

2

Lanham Act, false advertising under N.J.S.A. § 56:8-2 *et seq.*, trademark infringement under federal and state statutes, trade dress infringement, common law unfair competition and tortious interference with prospective economic advantage.

## FACTS

7.      Plaintiff, Interlink, is a New Jersey based research & development company specializing in the development, manufacturing and marketing of innovative consumer and professional healthcare products in the shower and bath, personal care and cleaning categories. The company was founded in 1996 and built on conceptual and technological innovation, high product quality and excellence in customer service.

8.      Interlink's products include several lines of showerheads that can be purchased from various sources, including Amazon.com ("Amazon").  Interlink's products can also be purchased from major retailers such as Wal-Mart and Bed Bath & Beyond.

9.      Interlink owns or is the exclusive licensee of several federally registered trademarks for its showerhead brands, including AQUASPA® (Registration No. 3540119), AQUASTORM® (Registration No. 4560429), AQUADANCE® (Registration No. 4560425) and SPIRALFLO® (Registration No. 3799042) (hereinafter referred to collectively as the "Interlink Marks").

10.     Interlink has worked diligently to cultivate and preserve its reputation as a provider of high quality showerheads.  The Interlink Marks are symbolic of the goodwill and consumer recognition built up by Interlink through the maintenance of high quality standards, and substantial investment of time and effort in promotion of its brands.

11.     Defendant competes directly with Interlink for sales of showerheads to online consumers, including those consumers who purchase products through Amazon.com.   On

information and belief, Defendant also competes with Interlink for showerhead sales through other market channels.

Defendant Sells Illegal Products On Amazon

12.     Amazon is the largest retailer on the internet and represents a powerful sales and marketing channel for consumer goods.

13.     Interlink is the leading seller of showerheads on Amazon.

14.     Amazon stands as a proxy for its customers with respect to determining which venders will have the opportunity to sell to those customers through the Amazon platform. Because of the popularity of Amazon, sellers who are permitted access to the platform have a distinct advantage with respect to marketing their goods to online consumers.  Absent access to the Amazon platform, vendors lose the most effective means of marketing to millions of potential purchasers online.

15.     In order to gain access to Amazon, sellers must represent and agree that they will comply with all applicable laws, statutes, and regulations, and that their products comply with all laws and regulations and with Amazon's policies.  A copy of the Amazon seller Participation Agreement is attached as Exhibit A.

16.     Amazon explicitly informs sellers that, by purchasing through Amazon.com, Amazon customers trust that the products being sold comply with all laws.  Amazon includes the following policy statement on the Amazon.com website, which is incorporated into the Amazon seller Participation Agreement:

Restricted Products

Customers trust that they can always buy with confidence on Amazon.com. Products offered for sale on Amazon.com must comply with all laws and regulations and with Amazon's policies. The sale of

4

illegal, unsafe, or other restricted products listed on these pages, including products available only by prescription, is strictly prohibited.

*See* Exhibit B.

17.     Defendant further agreed, pursuant to the terms of the Amazon Participation Agreement, that by listing its products on Amazon.com, it "represent[s] and warrant[s] to prospective Buyers that [Defendant has] the right and ability to sell, and that the listing is accurate, current, and complete and is not misleading or otherwise deceptive."  *See*  Exhibit A at ¶ 8.

18.     Contrary to its representations to Amazon and its customers, Defendant contracts with Chinese suppliers of cheaply-made showerheads that violate U.S. laws so that it can sell the showerheads illegally to unwitting purchasers.

19.     The Energy Policy Act of 1992, and the regulations promulgated pursuant thereto (collectively the "EP Act") require all showerheads manufactured after January 1, 1994 have a maximum flow rate of "2.5 gallons per minute (9.5 liters per minute) when measured at a flowing pressure of 80 pounds per square inch gage (552 kilopascals)." 10 CFR Part 430.32(p); 42 U.S.C. § 6295(j).  The EP Act also requires all showerheads to "meet the requirements of ASME/ANSI  A112.18.1M-1989, 7.4.3(a)"  (42 U.S.C. § 6295(j)), which sets forth additional standards for showerheads.

20.     In addition to the flow rate restrictions imposed under 10 CFR Part 430.32(p), the federal regulations promulgated pursuant to the EP Act (specifically 16 C.F.R. Part 305.16) require that showerheads "bear a permanent, legible marking indicating the flow rate," that they be marked "A112.18.1M" to reflect compliance with the applicable ASME (American Society of Mechanical Engineers) standard, and that the packaging for all showerheads reflect the flow rate and be marked with "A112.18.1M."

21.     The flow rate restrictions and related requirements imposed by the EP Act were enacted to serve the important public interest of water conservation.

22.     Compliance with the flow rate restrictions of the EP Act impacts the characteristics of showerheads by limiting the amount of water expelled by the showerhead at a given water pressure over any given period of time.  Successful showerhead manufacturers, such as Interlink, sell products designed to achieve excellent performance at lower flow rates.  The production of high-performing compliant products involves research and the expenditure of resources that, ultimately, increases the cost of such products.

23.     Manufacturers that illegally sell non-compliant, high-flow showerheads gain an unfair competitive advantage over compliant manufacturers by (a) avoiding the cost of producing compliant showerheads that perform to levels acceptable to consumers, which allows them to sell at lower prices; and (b) by misleading consumers into believing that the showerheads they sell are competitive with or superior to compliant showerheads (because the high water pressure of their showerheads provides a better showering experience) when, in fact, the performance of their non-compliant showerheads is attributable to an unlawfully high flow rate.

24.     In promoting its showerheads through Amazon, and in order to gain access to the Amazon platform and compete with Interlink for the business of Amazon customers, Defendant falsely represented that it and its products were and would remain in compliance with all applicable laws when, in fact, Defendant unlawfully sells showerheads that violate numerous requirements imposed by the EP Act and, additionally, do not bear an indication of the country of origin of the showerhead, as required under 19 CFR Part 134.

25.     On information and belief, Defendant has sold a large number of showerheads through Amazon.com and other channels.  On information and belief, most if not all of those

showerheads do not comply with the EP Act's flow rate and labeling restrictions or the ASME A112.18.1M-1989 standard.  Pictures of samples of Defendant's showerheads purchased from Amazon.com showing that they do not contain the requisite 2.5 gallon-per-minute flow regulator are attached as Exhibit C.

26.     On information and belief, at least some of Defendant's showerheads sold on Amazon.com and elsewhere were not marked with the country of origin.

27.     Defendant continues to misrepresent the nature of its showerheads sold through Amazon in order to unfairly compete with Interlink.

28.     Defendant's representation that its products comply with all applicable laws and regulations when, in fact, its showerheads do not comply with the EP Act or marking regulations was and is literally false.

29.     The question of whether Defendant's showerheads complied with the law was material to Amazon's allowing Defendant to sell through Amazon.com and to consumers' decisions to purchase showerheads from Defendant.

30.     Defendant knew or reasonably should have known that its showerheads did not comply with the EP Act and marking regulations.

31.     Defendant's sale of illegal showerheads on Amazon constitutes a violation of Amazon's seller requirements and a deception of consumers purchasing through Amazon.

32.     Absent Defendant's misrepresentations to Amazon, it would not have made its illegal sales in competition with Interlink and it is highly likely that Interlink would have made the sales to Amazon customers that Defendant made.

33.     Defendant's misrepresentations regarding the nature of its showerheads deceive consumers and unfairly enhance Defendant's market position and demand for its products.  On

7

information and belief, the illegally high flow rates of Defendant's showerheads positively influence online customer reviews of the showerheads which, in turn, have the tendency to increase sales of Defendant's showerheads, reducing Interlink's sales and unfairly enhancing Defendant's ability to compete with Interlink for future sales.

34.     Nowhere in Defendant's product information is it disclosed that Defendant's showerheads violate U.S. law.   To the contrary, Defendant sells its showerheads as if the showerheads were fully compliant, which they clearly are not.

35.     Defendant's sale of its showerheads in the United States and on Amazon necessarily implies that the showerheads have been manufactured in accordance with and comply with the law.

36.     On information and belief, environmental compliance is material to a significant number of consumers who have purchased Defendant's showerheads.

37.     On information and belief, consumers who purchased Defendant's showerheads would not have done so had they known the true nature of Defendant's showerheads.

38.     On information and belief, Defendant would not have been allowed to sell its showerheads on Amazon.com had Amazon known of the illegal nature of the Showerheads.

39.     Through its unlawful misrepresentations and omissions, Defendant has unfairly enhanced its goodwill in the market and market position as compared to Interlink, has unlawfully deprived Interlink of sales and customer goodwill, and has otherwise unfairly competed with Interlink.

40.     Absent Defendant's unlawful misrepresentations and omissions, it was very likely that the consumers who purchased Defendants' products would have purchased Interlink's products.

<u>Defendant's Further Misrepresentations and Violations of Interlink's Rights</u>

41.    In selling its showerheads on Amazon.com, Defendant set out to copy Interlink's successful trademark, product designs and product descriptions in order to trade on the goodwill established by Interlink, pass off its goods as Interlink products, and otherwise unfairly compete with Interlink.

42.    Sellers on Amazon.com are able to construct product listing pages containing product descriptions, pictures and other promotional content for customers to review when making the decision of whether to purchase the product.

43.    Rather than prepare its own Amazon product listing using pictures of Defendant's products and product descriptions developed by Defendants, Defendants literally copied the images and product descriptions for Interlink's showerheads and then used them to sell Defendant's products.  Examples of Defendant's Amazon listings showing pictures of Interlink's products and product descriptions are attached as Exhibit D.

44.    By using photos of Interlink's showerheads to sell its own products, Defendant misrepresented the nature and qualities of its showerheads in its promotional materials to consumers.

45.    Defendant's representation of its products to consumers using pictures of Interlink's products was literally false.

46.    Defendant also adopted the trademark AQUAFLOW for its showerheads, which, on information and belief, was done so that Defendant's brand would closely resemble the Interlink Marks and perpetuate confusion between Defendant's showerheads and Interlink's showerheads.

47.     Interlink sells an "AquaStorm" "SpiralFlo" showerhead on Amazon.com.  The AQUAFLOW trademark used by Defendant was apparently conceived by combining elements of the Interlink Marks such that AQUAFLOW would mimic a combination of the "Aqua" and "Flo" portions of the Interlink Marks.

48.     In an apparent effort to further mimic Interlink's branding and trade dress, and legitimize its illegal products in the minds of consumers, Defendant falsely marked, and continues to falsely mark, its AQUAFLOW products with the indicia federal trademark registration (the ® symbol) when, in fact, AQUAFLOW is not a federally registered trademark. Samples of Defendant's promotional materials misrepresenting that AQUAFLOW is federally registered are attached as Exhibit E.

49.     Defendant's representation that its AQUAFLOW brand is a federally registered trademark is literally false.

50.     On information and belief, Defendant set out to create Amazon product listing pages for its showerheads that would be virtually indistinguishable from those for Interlink's products so that customers shopping for showerheads on Amazon.com would perceive little to no difference between the parties' respective products and/or would confuse Defendant's illegal products for Interlink's products, the leading showerheads sold on Amazon.com.

51.     Interlink's Amazon product listing pages, its products and its product packaging contain distinctive, non-functional elements that constitute Interlink's trade dress.  Those elements include (a) the use of circular pictures arranged in a vertical column showing the various function modes of the showerheads, together with the terminology used to describe the functions and the font and positioning of the function descriptions beneath the pictures; (b) photographs of Interlink's products; (c) the look, feel and style of the presentation of product

images; (d) the non-functional aspects of the design of the products (see comparative photos attached as Exhibit F); and (e) the trademarks used in connection with the products.

52.     Interlink's trade dress is distinctive, non-functional and has achieved significant secondary meaning.

53.     Defendant's copying of Interlink's trade dress created a likelihood of confusion between Defendant's products and Interlink's products.  Defendant's sale of showerheads that (a) mimicked the non-functional design elements of Interlink's showerheads; (b) employed confusingly similar trademarks; and (c) were promoted using the same or nearly identical product descriptions, photographs, imagery, image arrangement, text arrangement and fonts (all copied from Interlink), each separately is and together are likely to cause confusion as to source, affiliation or sponsorship with respect to Defendant's showerheads.

54.     In at least one instance, one of Interlink's biggest customers was actually confused between Defendant's and Interlink's showerheads.

55.     Through the conduct described herein, Defendant infringed the Interlink Marks, along with the distinctive trade dress employed by Interlink.

56.     On November 21, 2014, Interlink sent Defendant a cease and desist letter demanding that Defendant cease using Interlink's product photographs and descriptions and remedy its failure to comply with labeling and flow rate laws.

57.     In response, Defendant revised its product photos and descriptions, but continued to employ imagery in the promotion of its products that copied the promotional images used on Interlink's products, including its AQUASPA® showerheads.

58.     Defendant also failed to rectify the noncompliance of its products with applicable law.

59.     On December 17, 2014, Interlink's counsel sent Defendant a second cease and desist letter addressing Defendant's conduct, including Defendant's use of the AQUAFLOW trademark, Defendant's misuse of the ® symbol on the unregistered AQUAFLOW mark, and Defendant's continued sale of illegal showerheads.

60.     Defendant has failed to satisfactorily rectify the issues raised by Interlink.

61.     This is not the first time that Defendant has been accused of infringing another's intellectual property rights.  Defendant was recently sued for willful patent infringement in the District of Arizona for selling a knock-off version of the plaintiff's patented underwater light show device.

62.     Additionally, on information and belief, at least one of Defendant's products, the Aquaflow 5 Function Luxury 4" Dual Showerhead System, infringes U.S. Patent No. 7,299,510. See attached Exhibits G (U.S. Patent No. 7,299,510) and H (comparison of Defendant's device to claim 1 of the patent).  Although this patent does not belong to Interlink, its infringement by Defendant is part of a pattern of calculated deception and willful disregard for government regulations and the intellectual property rights of others for the purpose of gaining an unfair competitive advantage.

63.     Defendant's infringement of the intellectual property rights of Interlink and others as detailed herein is directly contrary to Amazon's policies.  In order to gain access to the Amazon.com seller platform, Defendant represented that its products and product listings would not infringe the intellectual property rights of others (see Exhibit A at ¶¶ 4, 20) when, in reality, its listings were stolen from Interlink, at least one of its products appears to infringe a patent, and its listings and products infringe Interlink's trade dress.  Absent those misrepresentations,

Defendant would not have been permitted to sell its infringing products on Amazon.com in direct competition with Interlink and to Interlink's detriment.

64.     Defendant's foregoing conduct described in this Complaint was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) entitling Interlink to an award of enhanced damages and reasonable attorney's fees.

65.     The acts of said Defendant described herein have been and continue to be in bad faith and conscience and in deliberate disregard of Interlink's rights and with the intention of depriving Interlink of monies that Interlink would otherwise receive.

66.     Through the foregoing conduct described in this Complaint, Defendant has acted in wanton and willful disregard of Interlink's rights such that Interlink is entitled to an award of punitive damages.

## COUNT I
### (False Advertising - 15 U.S.C. § 1125 (a))

67.     Plaintiff restates and realleges the allegations of paragraphs 1-66 as if fully set forth herein.

68.     Through the foregoing conduct, including Defendant's (a) misrepresentations and omissions with respect to the legality of its showerhead products, Defendant's compliance with the law and non-infringement; (b) misrepresentation in its Amazon.com promotional materials that Defendant's products were Interlink's products when in fact they were not; (c) misrepresentation in its Amazon.com promotional materials that Defendant's products were the same as Interlink's products; (d) misrepresentation that its AQUAFLOW brand is a registered trademark when no federal registration for the mark has been obtained; and (e) omissions concerning the country of origin of its showerheads, Defendant made and continues to make

false or misleading statements and omissions as to the nature and qualities of its showerheads and in the promotion of those showerheads.

69.     Defendant's false and misleading statements and omissions regarding its showerheads are literally false, deceived and continue to deceive Amazon and consumers purchasing Defendant's showerheads, and otherwise have the tendency to deceive potential purchasers of Defendant's showerheads.

70.     The deception brought about by Defendant's false and misleading statements and omissions detailed in the preceding paragraphs was and is material in that those statements and omissions likely influenced and will continue to influence purchasing decisions concerning Defendant's showerheads.

71.     Defendant's goods travel in interstate commerce.

72.     Defendant's deceptive conduct has caused and will continue to cause immediate and irreparable injury to Interlink, including declining sales, unfair price competition and loss in market share, for which there is no adequate remedy at law.

73.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

## COUNT II
### (False Advertising – N.J.S.A. § 56:8-2 *et seq.*)

74.     Plaintiff restates and realleges the allegations of paragraphs 1-73 as if fully set forth herein.

75.     Defendant's showerheads are consumer goods.

76.     Through its conduct in connection with the sale and advertisement of its showerheads, Defendant has used and employed unconscionable commercial practices,

14

deception, fraud, and misrepresentations concerning the nature of its showerheads and has knowingly concealed, suppressed, or omitted material facts concerning the nature of its showerheads with intent that Groupon and other potential purchasers rely upon such concealment, suppression or omission.

77.     As a result of the foregoing conduct, Interlink has suffered ascertainable loss including lost sales and lost market share.

78.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

## COUNT III
### (Federal Trademark Infringement – 15 U.S.C. § 1114)

79.     Plaintiff restates and realleges the allegations of paragraphs 1-78 as if fully set forth herein.

80.     Defendant's use of a trademark that is confusingly similar to the Interlink Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's showerheads are manufactured or distributed by Interlink, or are associated or connected with Interlink, or have the sponsorship, endorsement, or approval of Interlink.

81.     Defendant has used marks confusingly similar to Interlink's federally registered marks in violation of 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Interlink's goodwill and reputation, for which Interlink has no adequate remedy at law.

82.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Interlink's federally registered trademarks.

83.     Defendant has caused and is likely to continue causing substantial injury to the public and to Interlink.

84.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees and costs under 15 U.S.C. §§ 1114, 1116 and 1117, along with any other relief the court deems just.

**COUNT IV**
**(Federal Unfair Competition – 15 U.S.C. § 1125(a))**

85.     Plaintiff restates and realleges the allegations of paragraphs 1-84 as if fully set forth herein.

86.     Defendant's use of a trademark that is confusingly similar to the Interlink Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's showerheads are manufactured or distributed by Interlink, or are associated or connected with Interlink, or have the sponsorship, endorsement, or approval of Interlink.

87.     Defendant has made false representations, false descriptions, and false designations of origin of its goods in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Interlink's goodwill and reputation, for which Interlink has no adequate remedy at law.

88.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Interlink's trademarks.

16

89.     Defendant has caused and is likely to continue causing substantial injury to the public and to Interlink.

90.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees and costs pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117, along with any other relief the court deems just.

## COUNT V
### (Federal Trade Dress Infringement – 15 U.S.C. § 1125(a))

91.     Plaintiff restates and realleges the allegations of paragraphs 1-90 as if fully set forth herein.

92.     Defendant's copying of Interlink's distinctive trade dress of its products, as described in the preceding paragraphs, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's showerheads are manufactured or distributed by Interlink, or are associated or connected with Interlink, or have the sponsorship, endorsement, or approval of Interlink.

93.     Defendant has made false representations, false descriptions, and false designations of origin of its goods in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Interlink's goodwill and reputation, for which Interlink has no adequate remedy at law.

94.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Interlink's trade dress.

95.     Defendant has caused and is likely to continue causing substantial injury to the public and to Interlink.

96.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees and costs pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117, along with any other relief the court deems just.

## COUNT VI
### (Unfair Competition – N.J.S.A. § 56:4-1 )

97.     Plaintiff restates and realleges the allegations of paragraphs 1-96 as if fully set forth herein.

98.     Through the acts described above, Defendant has willfully and knowingly engaged in unfair acts or practices and unfair methods of competition, including the bad faith usage of Interlink's trademarks, trade dress and goodwill.

99.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

## COUNT VII
### (Common Law Unfair Competition)

100.     Plaintiff restates and realleges the allegations of paragraphs 1-99 as if fully set forth herein.

101.     Through the foregoing conduct, Defendant has committed common law unfair competition.

102.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

## COUNT VIII
### (Tortious Interference With Prospective Economic Advantage)

103.    Plaintiff restates and realleges the allegations of paragraphs 1-102 as if fully set forth herein.

104.    Through the foregoing conduct, Defendant intentionally and improperly interfered with Interlink's prospective sales to Amazon customers.

105.    By deceiving Amazon into believing that its illegal showerheads comply with the law, Defendant gained access to the Amazon sales platform and unlawfully prevented Interlink from selling its showerheads to Amazon customers.

106.    It is highly likely that, absent Defendant's wrongful and deceptive conduct, Interlink would have made the sales to Amazon customers that Defendant made.

107.    Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunction relief, damages, punitive damages and any other relief the court deems just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

I.      That Defendant, its officers, agents, servants, employees, attorneys, privies, subsidiaries, divisions, successors and assigns, and all persons and organizations in active concert, participation or combination with any of the foregoing be permanently enjoined from and/or Ordered to:

A. Cease making or employing any false or misleading statements or omissions concerning the nature of Defendant's showerheads as such statements concern compliance with applicable statutes or regulations;

19

B.  Immediately take all steps necessary to remove Defendant's showerheads that do not comply with applicable statutes and regulations from the market, including Amazon.com, and otherwise stop selling showerheads that do not comply with applicable laws;

C.  Provide notice to all customers and resellers of Defendant's showerheads disclosing that the showerheads to not comply with applicable regulations and offering a full refund for all quantities purchased;

D.  Cease using the AQUAFLOW trademark or any other mark that is confusingly similar to any Interlink trademark;

E.  Immediately cease and refrain from utilizing any product descriptions, imagery, promotional materials, product designs or any other product related elements that copy, mimic, or are confusingly similar to the trade dress employed by Interlink on its products and product promotional materials; and

F.  Cease and refrain from representing or suggesting that its products are the same as Interlink's products

II.    That Plaintiffs obtain the following relief:

A.  An accounting and disgorgement of all profits Defendant has gained through the sale of showerheads through Amazon and anywhere else in competition with Interlink;

B.  Compensatory damages in an amount not less than $1.2 million;

C.  Treble damages;

D.  Reasonable attorneys' fees and costs;

E.  Punitive damages in an amount not less than $12 million; and

F.  Any other relief in Interlink's favor that the court deems just and proper.

20

Dated: February 23, 2015                    Respectfully submitted,

                                            The Law Office Of
                                            JASON B. LATTIMORE, ESQ. LLC


                                            By  s/ Jason B. Lattimore
                                                 Jason B. Lattimore
                                                 55 Madison Avenue, Suite 400
                                                 Morristown, NJ 07960
                                                 Telephone: (973) 998-7477
                                                 Facsimile:  (973) 264-1159

                                                 *Attorneys for Plaintiff*
                                                 *Interlink International Products, Inc.*


## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable by jury.


Dated: February 23, 2015                    Respectfully submitted,

                                            The Law Office Of
                                            JASON B. LATTIMORE, ESQ. LLC


                                            By  s/ Jason B. Lattimore
                                                 Jason B. Lattimore
                                                 55 Madison Avenue, Suite 400
                                                 Morristown, NJ 07960
                                                 Telephone: (973) 998-7477
                                                 Facsimile:  (973) 264-1159

                                                 *Attorneys for Plaintiff*
                                                 *Interlink International Products, Inc.*

21

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned hereby certifies that, to the best of his knowledge, this matter is not the subject of any other action pending in any court, or any pending or contemplated arbitration or administrative proceeding.  The undersigned further certifies that, to the best of his knowledge, there are no additional parties who should be joined in this matter.

Dated: February 23, 2015                    Respectfully submitted,

The Law Office Of
JASON B. LATTIMORE, ESQ. LLC

By  s/ Jason B. Lattimore
    Jason B. Lattimore
    55 Madison Avenue, Suite 400
    Morristown, NJ 07960
    Telephone: (973) 998-7477
    Facsimile:  (973) 264-1159

    *Attorneys for Plaintiff*
    *Interlink International Products, Inc.*