Jason B. Lattimore
**The Law Office Of**
**JASON B. LATTIMORE, ESQ. LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 998-7477
Facsimile:  (973) 264-1159

*Attorneys for Plaintiff,*
*Interlink Products International, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERLINK PRODUCTS INTERNATIONAL, INC., | Case No: 3:15-cv-01340-MAS-DEA CIVIL ACTION |
| Plaintiff, | |
| v. | **THIRD AMENDED COMPLAINT & JURY TRIAL DEMAND** |
| F&W TRADING LLC and GIDEON PRODUCTS, LLC, | |
| Defendants. | |

Plaintiff, Interlink Products International, Inc. (hereinafter "Interlink" or "Plaintiff"), by and through its undersigned attorney, hereby complains of Defendants, F&W Trading LLC ("F&W") and Gideon Products, LLC ("Gideon") (together, the "Defendants"), as follows:

### THE PARTIES

1.      Plaintiff is a New Jersey corporation with its principal place of business at 1315 East Elizabeth Avenue, Linden, NJ 07036.

2.      On information and belief, F&W is a New Jersey Limited Liability Company with its principal place of business at 681 River Avenue, Suite 2C, Lakewood, New Jersey 08701.

3.      On information and belief, Gideon is a New Jersey Limited Liability Company with its principal place of business at 681 River Avenue, Suite 2C, Lakewood, New Jersey 08701.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims alleged pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331.  The Court also has jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims alleged are so related to the claims over which the Court has original jurisdiction that they form part of the same case.

5.      This Court has personal jurisdiction over Defendants in that they do business regularly in this district.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## NATURE OF THE CLAIMS

7.      This case arises out of Defendants' wide-sweeping unfair and deceptive competitive practices and their infringement of Interlink's trade dress and trademarks. Defendants have (a) represented in their advertising and promotional materials that their dual showerheads require "absolutely no tools" to install when, in fact, the instructions provided with the showerheads clearly indicate that tools are required for their installation; (b) used deceptive tactics to enhance their online shower product ratings, thereby tricking customers into purchasing their products and stealing sales from Interlink; (c) misrepresented the nature and qualities of their products by using images of Interlink's products to promote and sell their own products; and (d) sold products with no means of limiting water flow rate, thereby gaining an unfair competitive advantage over Interlink.   Defendants further violated Interlink's rights and employed misrepresentations in the promotion of their products by adopting a trademark that is

2

confusingly similar to federally registered marks used by Interlink, by misrepresenting that their infringing trademark is federally registered when, in fact, it is not, and by copying Interlink's distinctive trade dress.  Interlink asserts claims against Defendants for false advertising under the Lanham Act, false advertising and deceptive practices under N.J.S.A. § 56:8-2 *et seq.*, trademark infringement and unfair competition under federal and state statutes, trade dress infringement, common law unfair competition and tortious interference with prospective economic advantage.

## FACTS

8.   Plaintiff, Interlink, is a New Jersey based research & development company specializing in the development, manufacturing and marketing of innovative consumer and professional healthcare products in the shower and bath, personal care and cleaning categories. The company was founded in 1996 and built on conceptual and technological innovation, high product quality and excellence in customer service.

9.   Interlink's products include several lines of showerheads that can be purchased from various sources, including Amazon.com ("Amazon") and Groupon.com ("Groupon"). Interlink's products can also be purchased from major retailers such as Wal-Mart and Bed Bath & Beyond.

10.   Interlink owns or is the exclusive licensee of several federally registered trademarks for its showerhead brands, including AQUASPA® (Registration No. 3540119), AQUASTORM® (Registration No. 4560429), AQUADANCE® (Registration No. 4560425) and SPIRALFLO® (Registration No. 3799042) (hereinafter referred to collectively as the "Interlink Marks").

11.   Interlink has worked diligently to cultivate and preserve its reputation as a provider of high quality showerheads.  The Interlink Marks are symbolic of the goodwill and

consumer recognition built up by Interlink through the maintenance of high quality standards, and substantial investment of time and effort in promotion of its brands.

12.     Defendants F&W and Gideon are, for all practical purposes, the same company. Indeed, Defendants present Gideon on their website as "Gideon By F&W."  Gideon is either the alter ego of F&W or the mere continuation of F&W.  At a minimum, F&W and Gideon act and have acted in concert with respect to the conduct on which Interlink's claims herein are based.

13.     Defendants compete directly with Interlink for sales of showerheads to online consumers, including those consumers who purchase products through Amazon and Groupon. On information and belief, Defendants also compete with Interlink for showerhead sales through other market channels.

Defendants Sell Illegal Products On Amazon and Groupon

14.     Amazon and Groupon are among the largest retailers on the internet and represent powerful sales and marketing channels for consumer goods.

15.     Interlink is the leading seller of showerheads on both Amazon and Groupon (and online generally).

16.     Online marketplaces like Amazon and Groupon serve as a proxy for the millions of customers who shop on their respective websites.  Each controls the gateway to its marketplace and, in that regard, represents the customers who shop there in their dealings with merchants such as Defendants.

17.     With respect to major online marketplaces such as Amazon and Groupon, each represents a significant portion of the relevant markets pertaining to the sale of showerheads.

18.     It is common for online marketplace sites like Amazon and Groupon to set threshold product standards that suppliers/sellers must meet, including compliance with

applicable laws, in order for the products to be eligible for purchase.  In order for Defendants to do business with and through Amazon, Groupon and similar online marketplaces, Defendants had to make certain promotional representations regarding the nature of their products.  For instance, Amazon required Defendants to represent and agree that they would comply with all applicable laws, statutes, and regulations, and that their products comply with all laws and regulations and with Amazon's policies.  A copy of the Amazon seller Participation Agreement is attached as Exhibit A.  Defendants further agreed, pursuant to the terms of the Amazon Participation Agreement, that by listing their products on Amazon.com, they "represent and warrant to prospective Buyers that [Defendants have] the right and ability to sell, and that the listing is accurate, current, and complete and is not misleading or otherwise deceptive." *See* Exhibit A at ¶ 8.

19.     Similarly, Groupon required Defendants to represent that their products are "manufactured, stored, packaged, labeled, supplied and delivered or shipped (as applicable), in accordance with all applicable international, federal, state and local laws and all executive orders and rules and regulations issued thereunder."  A copy of the Groupon vendor Terms & Conditions reflecting the representations made by Defendants are attached to this Complaint as Exhibit B.

20.     Further, on information and belief, the fact that a product is sold through or permitted to be sold on a reputable online marketplace has the tendency to lead consumers to believe that, at a minimum, the product complies with applicable laws and regulatory standards. Amazon explicitly recognizes as much, and includes the following policy statement on its website:

Restricted Products

Customers trust that they can always buy with confidence on Amazon.com. Products offered for sale on Amazon.com must comply with all laws and regulations and with Amazon's policies. The sale of illegal, unsafe, or other restricted products listed on these pages, including products available only by prescription, is strictly prohibited.

*See* http://www.amazon.com/gp/help/customer/display.html?nodeId=200277040, attached as Exhibit C.

21.     Contrary to their promotional representations to Amazon, Groupon and their customers, Defendants contract with suppliers of cheaply-made showerheads that violate U.S. laws so that they can sell the showerheads illegally to unwitting purchasers.

22.     The Energy Policy Act (42 U.S.C. §§ 6291-6309), and the regulations promulgated pursuant thereto (collectively the "EP Act") require that all showerheads manufactured after January 1, 1994 have a maximum flow rate of "2.5 gallons per minute (9.5 liters per minute) when measured at a flowing pressure of 80 pounds per square inch gage (552 kilopascals)." 10 CFR Part 430.32(p); 42 U.S.C. § 6295(j).  The EP Act also requires all showerheads to "meet the requirements of ASME/ANSI A112.18.1M-1989, 7.4.3(a)" (42 U.S.C. § 6295(j)), which sets forth additional standards for showerheads and flow rate testing.

23.     In addition to the flow rate restrictions imposed under 10 CFR Part 430.32(p), the federal regulations promulgated pursuant to the EP Act (specifically 16 C.F.R. Part 305.16) require that showerheads "bear a permanent, legible marking indicating the flow rate," that they be marked "A112.18.1M" to reflect compliance with the applicable ASME (American Society of Mechanical Engineers) standard, and that the packaging for all showerheads reflect the flow rate and be marked with "A112.18.1M."

24.     42 U.S.C. § 6302(a) prohibits the distribution in commerce of showerheads that do not comply with the EP Act's energy conservation and labeling requirements.  Further, 42 U.S.C. § 6303(c) declares written representations in violation of 42 U.S.C. § 6293(c) (prohibiting unsupported or false written statements regarding product water use) to be an unfair or deceptive act or practice.

25.     The flow rate restrictions and related requirements imposed by the EP Act were enacted to serve the important public interests of water conservation and environmental protection.

26.     Compliance with the flow rate restrictions of the EP Act impacts the characteristics of showerheads by limiting the amount of water expelled by the showerhead at a given water pressure over any given period of time.  Successful showerhead manufacturers, such as Interlink, sell products designed to achieve excellent performance when equipped with flow restrictors limiting the flow of each showerhead to 2.5 gpm.  The production of high-performing compliant products involves research and the expenditure of resources that, ultimately, increases the cost of such products.

27.     It is and has been Interlink's practice to include 2.5 gpm flow restrictors in each of the showerheads it sells and otherwise to comply with applicable laws.

28.     Manufacturers, such as Defendants, that illegally sell non-compliant, high-flow showerheads gain an unfair competitive advantage over compliant manufacturers by (a) avoiding the cost of producing compliant showerheads that perform to levels acceptable to consumers, which allows them to sell at lower prices; and (b) by misleading consumers into believing that the showerheads they sell are competitive with or superior to compliant showerheads (because the high water pressure of their showerheads provides a better showering experience) when, in

fact, the performance of their non-compliant showerheads is attributable to an unlawfully high flow rate.

29.     Online product reviews are a key factor in consumer purchasing decisions online. Products with positive online reviews generally enjoy much higher sales and a stronger competitive position than those with less favorable reviews.  Defendants have inappropriately exploited the influence that online product reviews have on product sales by providing professional reviewers – persons who review products in exchange for free samples of the products – with showerheads that contained no means of restricting water flow.  Because flow rate has such a profound impact on the performance of showerheads, the reviews provided by these individuals are both based on deception and have the tendency to deceive those relying on them.  Defendants' ostensible objective was and is that the reviewers rate the products favorably based on their unlawfully high flow rates, giving Defendants an even greater unfair competitive advantage.

30.     In promoting their showerheads to the Amazon and Groupon marketplaces, and in order to establish that their goods met the requirements for purchase by Amazon, Groupon and, on information and belief, other customers, and to gain market penetration, Defendants falsely represented that their products were and would remain in compliance with all applicable laws when, in fact, Defendants unlawfully sell showerheads that violate numerous requirements imposed by the EP Act and, additionally, do not bear an indication of the country of origin of the showerhead (China), as required under 19 CFR Part 134.

31.     On information and belief, Defendants have sold a large number of showerheads through Amazon, Groupon and other channels.  On information and belief, most if not all of those showerheads do not comply with the EP Act's flow rate and labeling restrictions or the

ASME A112.18.1M-1989 standard.  Pictures of samples of Defendants' showerheads purchased by Interlink from Amazon.com, which do not contain 2.5 gallon-per-minute flow regulators and have been confirmed to have flow rates in excess of the statutory maximum, are attached as Exhibit D.

32.     On information and belief, at least some of Defendants' showerheads sold on Amazon.com and elsewhere were not marked with the country of origin.

33.     Defendants continue to misrepresent the nature of their showerheads in order to unfairly compete with Interlink.

34.     Defendants' representation that their products comply with all applicable laws and regulations when, in fact, their showerheads do not comply with the EP Act or marking regulations was and is literally false.

35.     The question of whether Defendants' showerheads complied with the law was material to Defendants' showerheads being sold through online marketplaces such as Amazon and Groupon, and was also material to consumers' decisions to purchase showerheads from Defendants.

36.     Defendants knew or reasonably should have known that their showerheads did not comply with the EP Act and marking regulations.

37.     Defendants' sale of illegal showerheads through Amazon, Groupon and, on information and belief, other online marketplaces constitutes a violation of the respective marketplace's seller requirements and a deception of consumers.

38.     Absent Defendants' misrepresentations, they would not have made their illegal sales in competition with Interlink and it is highly likely that Interlink would have made the sales to customers that Defendants made.

39.    Defendants' misrepresentations regarding the nature of their showerheads deceive consumers and unfairly enhance Defendants' market position and demand for their products.  On information and belief, the illegally high flow rates of Defendants' showerheads positively influence online customer reviews of the showerheads which, in turn, have the tendency to increase sales of Defendants' showerheads, reducing Interlink's sales and unfairly enhancing Defendants' ability to compete with Interlink for future sales.

40.    Nowhere in Defendants' product information is it disclosed that Defendants' showerheads violate U.S. law.  To the contrary, Defendants sell their showerheads as if the showerheads were fully compliant, which they clearly are not.

41.    Defendants' sale of showerheads in the United States necessarily implies that the showerheads have been manufactured in accordance with and comply with the law.

42.    On information and belief, environmental compliance is material to a significant number of consumers who have purchased Defendants' showerheads.

43.    On information and belief, consumers who purchased Defendants' showerheads would not have done so had they known the true nature of Defendants' showerheads.

44.    On information and belief, Defendants would not have been allowed to sell their showerheads on Amazon, Groupon or other online marketplaces had those online marketplaces known of the illegal nature of the Showerheads.

45.    Through their unlawful misrepresentations and omissions, Defendants have unfairly enhanced their goodwill in the market and market position as compared to Interlink, have unlawfully deprived Interlink of sales and customer goodwill, and have otherwise unfairly competed with Interlink.

46.     Absent Defendants' unlawful misrepresentations and omissions, it was very likely that the consumers who purchased Defendants' products would have purchased Interlink's products.

<u>Defendants' Use of Interlink's Images, Trademarks and Trade Dress</u>

47.     In selling their showerheads on Amazon.com, Defendants set out to copy Interlink's successful trademark, product designs and product descriptions in order to trade on the goodwill established by Interlink, pass off their goods as Interlink products, and otherwise unfairly compete with Interlink.

48.     Sellers on Amazon.com are able to construct product listing pages containing product descriptions, pictures and other promotional content for customers to review when making the decision of whether to purchase the product.

49.     Rather than prepare their own Amazon product listing using only pictures of Defendants' products and product descriptions developed by Defendants, Defendants literally copied the images and product descriptions for Interlink's showerheads and then used them to sell Defendants' products.   Examples of Defendants' Amazon listings showing pictures of Interlink's products and product descriptions are attached as Exhibit E.

50.     By using photos of Interlink's showerheads to sell their own products, Defendants misrepresented the nature and qualities of their showerheads in their promotional materials to consumers.

51.     Defendants' representation of their products to consumers using pictures of Interlink's products was literally false.

52.     Defendants also adopted the trademark AQUAFLOW for their showerheads, which, on information and belief, was done so that Defendants' brand would closely resemble

the Interlink Marks and perpetuate confusion between Defendants' showerheads and Interlink's showerheads.

53.     Interlink sells an "AquaStorm" "SpiralFlo" showerhead on Amazon.com.  The AQUAFLOW trademark used by Defendants was apparently conceived by combining elements of the Interlink Marks such that AQUAFLOW would mimic a combination of the "Aqua" and "Flo" portions of the Interlink Marks.  Indeed, Defendants misappropriated one of Interlink's images of its AquaStorm SpiralFlo showerhead and used it on the cover of the packaging for their "Dual 5 Function Luxury Showerhead."  *See* Exhibit F.

54.     In an apparent effort to further mimic Interlink's branding and trade dress, and legitimize their illegal products in the minds of consumers, Defendants falsely marked, and continue to falsely mark, their AQUAFLOW products with the indicia of federal trademark registration (the ® symbol) when, in fact, AQUAFLOW is not a federally registered trademark. Examples of Defendants' promotional materials misrepresenting that AQUAFLOW is federally registered are attached as Exhibit G.

55.     Defendants' representation that their AQUAFLOW brand is a federally registered trademark is literally false.

56.     On information and belief, Defendants set out to create Amazon product listing pages for their showerheads that would mimic or closely resemble the listings, packaging and promotional materials for Interlink's products so that customers shopping for showerheads on Amazon.com would perceive little to no difference between the parties' respective products and/or would confuse Defendants' illegal products for Interlink's products.

57.     Interlink's Amazon product images, its products and its product packaging contain distinctive, non-functional elements that constitute Interlink's trade dress.   Those

12

elements include (a) the use of circular pictures arranged in a vertical column showing the various function modes of the showerheads, together with the terminology used to describe the functions and the font and positioning of the function descriptions beneath the pictures; (b) photographs of Interlink's products; (c) the look, feel and style of the presentation of product images; (d) the non-functional aspects of the design of the products, specifically the shape of the shower handle, head and shower jet design (see comparative photos attached as Exhibit H); and (e) the trademarks used in connection with the products.

58.     Interlink's trade dress is distinctive, non-functional and has achieved significant secondary meaning.

59.      Defendants' copying of Interlink's trade dress created a likelihood of confusion between Defendants' products and Interlink's products.  Defendants' sale of showerheads that (a) mimicked the non-functional design elements of Interlink's showerheads; (b) employed confusingly similar trademarks; and (c) were promoted using the same or nearly identical product descriptions, photographs, imagery, image arrangement, text arrangement and fonts (all copied from Interlink), each separately is and together are likely to cause confusion as to source, affiliation or sponsorship with respect to Defendants' showerheads.

60.     In at least one instance, one of Interlink's biggest customers was actually confused between Defendants' and Interlink's showerheads.

61.     Through the conduct described herein, Defendants infringed the Interlink Marks, along with the distinctive trade dress employed by Interlink.

62.      On November 21, 2014, Interlink sent Defendant F&W a cease and desist letter demanding that F&W cease using Interlink's product photographs and descriptions and remedy its failure to comply with labeling and flow rate laws.

63.    In response, Defendants revised their product photos and descriptions, but continued to employ imagery in the promotion of their products that copied the promotional images used on Interlink's products, including its AQUASPA® showerheads.

64.    Defendants also failed to rectify the noncompliance of their products with applicable law.

65.    On December 17, 2014, Interlink's counsel sent F&W a second cease and desist letter addressing Defendants' conduct, including Defendants' use of the AQUAFLOW trademark, Defendants' misuse of the ® symbol on the unregistered AQUAFLOW mark, and Defendants' continued sale of illegal showerheads.

66.    Defendants again failed to satisfactorily rectify the issues raised by Interlink.

67.    This is not the first time that F&W has been accused of infringing another's intellectual property rights.   F&W was recently sued for willful patent infringement in the District of Arizona for selling a knock-off version of the plaintiff's patented underwater light show device.

68.    Additionally, on information and belief, at least one of Defendants' products, the Aquaflow 5 Function Luxury 4" Dual Showerhead System, infringes U.S. Patent No. 7,299,510. See attached Exhibits I (U.S. Patent No. 7,299,510) and J (comparison of Defendants' device to claim 1 of the patent).   Although this patent does not belong to Interlink, its infringement by Defendants is part of a pattern of calculated deception and willful disregard for government regulations and the intellectual property rights of others for the purpose of gaining an unfair competitive advantage.

69.    Defendants' infringement of the intellectual property rights of Interlink and others as detailed herein is directly contrary to the policies of Amazon, Groupon and, on information

and belief, other online marketplaces through which Defendants sell their showerheads.  In order to gain access to the Amazon and Groupon seller platforms, Defendants promoted their showerheads by representing that their showerheads and product listings would not infringe the intellectual property rights of others (see Exhibit A at ¶¶ 4, 20; Exhibit B at § 15(e)) when, in reality, their listings were stolen from Interlink, at least one of their products appears to infringe a patent, and their listings and packaging infringe Interlink's trade dress.  Absent those misrepresentations, Defendants would not have been permitted to sell their infringing products on Amazon or Groupon in direct competition with Interlink and to Interlink's detriment.

Defendants' Scheme To Inflate Their Product Ratings and Rankings On Amazon

70.      Product reviews and ratings are central to consumer purchasing decisions on Amazon.  Customers on Amazon use reviews and ratings to help distinguish between similar products, such as the shower products sold by the respective parties.

71.      Reviewers rate Amazon products on a one-to-five star rating system.  Reviewers also can include a written review with their rating.  When a customer on Amazon searches for a type of product, such as showerheads, the search results are displayed vertically with, among other information, a picture of the product, an abbreviated product description, and a visual representation showing the average rating (out of 5 stars) for the product, rounded to the nearest ½ star.  When a customer points the mouse on the star rating, the customer is shown the precise average rating for the product and a statistical breakdown of how many one, two, three, four and five star ratings the product received.  A product's rating compared to other similarly priced competitive products plays a key role in Amazon consumers' purchasing decisions.

72.      Amazon sellers may provide free or discounted products to professional reviewers in exchange for a review.  Typically, professional reviews are used for limited purposes, such as

15

product launches or promotional events.  When not abused, there is nothing wrong with the use of professional product reviewers.

73.    However, the excessive use of professional reviews constitutes a deceptive and unfair competitive practice.  The ratings average that a customer sees on Amazon does not distinguish between professional reviewers and legitimate purchasers.  Rather, the average rating includes the ratings provided by all reviewers.  Because professional reviews are inherently biased and tend to favor the seller, their excessive use, particularly when the number of reviews is overwhelmingly large and the reviews are continuously obtained over a period of time, leads to artificially inflated product ratings that deceive consumers into believing that a seller's product is of greater quality and has a significantly higher satisfaction rating among unbiased purchasers than it, in fact, has.  The effect of continuously flooding Amazon with professional reviews is that the professional reviews skew or overwhelm the reviews of ordinary purchasers.  Amazon therefore prohibits excessive use of professional reviewers.  *See* Exhibit K.

74.    Defendants' core business strategy is founded on taking business from competitors through massive continuous ratings manipulation using professional reviewers.  To date, Defendants have solicited and received over 1,500 professional reviews of their products, sending excessive quantities of free samples of products to professional reviewers so that the Amazon reviews for those products are flooded with professional reviews.  This figure represents 64% of all Amazon reviews received for all of Defendants' products since their launch.  Defendants commissioned and received over 300 professional reviews for just one of their products (a dual showerhead) alone within 18 months of its Amazon launch.

75.    Because professional reviews are inherently biased and are almost invariably favorable, Defendants' sustained excessive use of professional reviews causes the average star-

rating and the number of high star ratings for Defendants' products to increase significantly, thereby misleading consumers. Defendants cause professional reviews to dominate their product ratings by continuously soliciting and receiving such reviews long after product launch, ensuring that the number of professional reviews for each of its products is substantial enough to counter any negative reviews by unbiased purchasers. For example, one of Defendants' showerheads on Amazon has a 4.2 star rating, creating the appearance that it is a quality product. Defendants created this misleading rating by commissioning and receiving no less than 123 professional reviews of the 237 total Amazon reviews received for the showerhead. These professional reviews produced an average rating of 4.8 stars, whereas the remaining 114 regular reviews resulted in a 3.7 stars average rating. A similar showerhead sold by Interlink has a 4.1 star rating and 354 total reviews, none of which are from professional reviewers. Had Defendants not resorted to excessive use of professional reviews, their showerhead's rating would have been in the range of 3.7 stars, rather than being higher than the rating of Interlink's product.

76.     The sheer volume of professional reviews, along with the fact that Defendants cause professional reviews to be continuously added to their product listings, tricks customers into believing that Defendants' products have a greater level of endorsement by purchasers than they, in fact, have. The deceptively inflated ratings divert sales from Interlink, which has appropriately limited its use of professional reviewers to some product launches and special promotional events.

77.     Defendants' excessive and ongoing use of professional reviewers also has the effect of artificially elevating the ranking position of their product listings, increasing their visibility. This causes more customers to see these products, when searching on Amazon, and to be misled by their deceptive ratings.

78.     At all relevant times, Defendants have known or should have known that their excessive use of professional reviewers artificially inflates their product ratings.  Defendants have engaged in this conduct for the purpose of deceiving Amazon customers into purchasing their products and unfairly competing with Interlink.

79.     Defendants' product ratings are literally false due to Defendants' manipulation of the ratings.

80.     Product rating is material to consumers looking to purchase shower products on Amazon.

<u>Defendants Deceive Customers Regarding the Installation of Their Dual Showerheads</u>

81.     Interlink's dual showerhead products feature a tool-free diverter and showerhead installation.  The tool free installation of Interlink's dual showerheads provides Interlink with a competitive advantage over showerhead sellers whose products require tools for installation. Tool free installation is a major selling point with respect to consumer showerheads.  Consumer showerhead products that offer tool-free installation substantially outsell showerhead products that do not.

82.     Defendants sell at least four variations of dual showerhead systems on Amazon. In their product listings on Amazon for their dual showerhead systems, Defendants advertise that installation of the systems requires "absolutely no tools."  *See* Exhibit L.

83.     Defendants' statements in their Amazon listings that installation of their dual showerhead systems requires no tools are literally false.

84.     Defendants' installation instructions for each of the dual-showerhead systems at issue clearly instruct the purchaser to use a "wrench or pliers to tighten all connections."  *See* Exhibit M.

85.     Whether a showerhead features tool-free installation is material to the purchasing decisions of consumers with respect to showerheads.  Absent Defendants' misrepresentations regarding the installation of their dual showerhead products, it is likely that Interlink would have made sales of its dual showerhead systems to customers who purchased Defendants' dual showerheads.

86.     Defendants' foregoing conduct described in the preceding sections and paragraphs of this Complaint was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) entitling Interlink to an award of enhanced damages and reasonable attorney's fees.

87.     The acts of said Defendants described herein have been and continue to be in bad faith and conscience and in deliberate disregard of Interlink's rights and with the intention of depriving Interlink of monies that Interlink would otherwise receive.

88.     Through the foregoing conduct described in this Complaint, Defendants have acted in wanton and willful disregard of Interlink's rights such that Interlink is entitled to an award of punitive damages.

## COUNT I
### (False Advertising - 15 U.S.C. § 1125 (a))

89.     Plaintiff restates and realleges the allegations of paragraphs 1-88 as if fully set forth herein.

90.     Through the foregoing conduct, including Defendants' (a) misrepresentations with respect to the illegality of their showerhead products, their noncompliance with the law, and their infringement; (b) misrepresentation in their Amazon.com promotional materials that Defendants' products were Interlink's products when in fact they were not; (c) misrepresentation

in their Amazon.com promotional materials that Defendants' products were the same as Interlink's products; (d) misrepresentation that their AQUAFLOW brand is a registered trademark when no federal registration for the mark has been obtained; (e) manipulating Amazon such that its products would be displayed with materially deceptive product ratings; and (f) mispresenting in their product listings that their dual showerheads require no tools for installation when, in fact, their own installation instructions confirm that tools are required.

91.     Defendants' false and misleading statements regarding their showerheads are literally false, deceived and continue to deceive Amazon, Groupon and consumers purchasing Defendants' showerheads, and otherwise have the tendency to deceive potential purchasers of Defendants' showerheads.

92.     The deception brought about by Defendants' false and misleading statements detailed in the preceding paragraphs was and is material in that those statements and omissions likely influenced and will continue to influence purchasing decisions concerning Defendants' showerheads.

93.     Defendants' goods travel in interstate commerce.

94.     Defendants' deceptive conduct has caused and will continue to cause immediate and irreparable injury to Interlink, including declining sales, unfair price competition and loss in market share, for which there is no adequate remedy at law.

95.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

**COUNT II**
**(False Advertising/Deceptive Practices – N.J.S.A. § 56:8-2 *et seq*.)**

96.     Plaintiff restates and realleges the allegations of paragraphs 1-95 as if fully set forth herein.

97.     Defendants' showerheads are consumer goods.

98.     Interlink is both a purchaser of Defendants' showerheads and a direct competitor of Defendants.

99.     Through their conduct in connection with the sale and advertisement of their showerheads, Defendants have used and employed unconscionable commercial practices, deception, fraud, and misrepresentations concerning the nature of their showerheads and have knowingly concealed, suppressed, or omitted material facts concerning the nature of their showerheads with the intent that potential purchasers rely upon such concealment, suppression or omission.

100.    As a result of the foregoing conduct, Interlink has suffered ascertainable loss including the purchase price of the product, lost sales and lost market share.

101.    Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

**COUNT III**
**(Federal Trademark Infringement – 15 U.S.C. § 1114)**

102.    Plaintiff restates and realleges the allegations of paragraphs 1-101 as if fully set forth herein.

103.    Defendants' use of a trademark that is confusingly similar to the Interlink Marks is likely to cause confusion, deception, and mistake by creating the false and misleading

impression that Defendants' showerheads are manufactured or distributed by Interlink, or are associated or connected with Interlink, or have the sponsorship, endorsement, or approval of Interlink.

104.    Defendants have used marks confusingly similar to Interlink's federally registered marks in violation of 15 U.S.C. § 1114, and Defendants activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Interlink's goodwill and reputation, for which Interlink has no adequate remedy at law.

105.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Interlink's federally registered trademarks.

106.    Defendants have caused and are likely to continue causing substantial injury to the public and to Interlink.

107.    Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees and costs under 15 U.S.C. §§ 1114, 1116 and 1117, along with any other relief the court deems just.

## COUNT IV
### (Federal Unfair Competition – 15 U.S.C. § 1125(a))

108.    Plaintiff restates and realleges the allegations of paragraphs 1-107 as if fully set forth herein.

109.    Defendants' use of a trademark that is confusingly similar to the Interlink Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' showerheads are manufactured or distributed by Interlink, or are associated or connected with Interlink, or have the sponsorship, endorsement, or approval of Interlink.

22

110.   Defendants' passing off of its products as Interlink's products, as described herein, has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' showerheads are manufactured or distributed by Interlink, or are associated or connected with Interlink, or have the sponsorship, endorsement, or approval of Interlink.

111.   Defendants have made false representations, false descriptions, and false designations of origin of their goods in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Interlink's goodwill and reputation, for which Interlink has no adequate remedy at law.

112.   Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Interlink's trademarks.

113.   Defendants have caused and are likely to continue causing substantial injury to the public and to Interlink.

114.   Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees and costs pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117, along with any other relief the court deems just.

**COUNT V**
**(Federal Trade Dress Infringement – 15 U.S.C. § 1125(a))**

115.   Plaintiff restates and realleges the allegations of paragraphs 1-114 as if fully set forth herein.

116.   Defendants' copying of Interlink's distinctive trade dress, as described in the preceding paragraphs, is likely to cause confusion, deception, and mistake by creating the false

and misleading impression that Defendants' showerheads are manufactured or distributed by Interlink, or are associated or connected with Interlink, or have the sponsorship, endorsement, or approval of Interlink.

117.    Defendants have made false representations, false descriptions, and false designations of origin of their goods in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Interlink's goodwill and reputation, for which Interlink has no adequate remedy at law.

118.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Interlink's trade dress.

119.    Defendants have caused and are likely to continue causing substantial injury to the public and to Interlink.

120.    Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees and costs pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117, along with any other relief the court deems just.

## COUNT VI
### (Unfair Competition – N.J.S.A. § 56:4-1)

121.    Plaintiff restates and realleges the allegations of paragraphs 1-121 as if fully set forth herein.

122.    Through the acts described above, Defendants have willfully and knowingly engaged in unfair acts or practices and unfair methods of competition, including the bad faith usage of Interlink's trademarks, trade dress and goodwill.

123.    Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

## COUNT VII
## (Common Law Unfair Competition)

124.    Plaintiff restates and realleges the allegations of paragraphs 1-123 as if fully set forth herein.

125.    Through the foregoing conduct, including without limitation the deceptive manipulation of Amazon ratings, Defendants have committed common law unfair competition.

126.    Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

## COUNT VIII
## (Tortious Interference With Prospective Economic Advantage)

127.    Plaintiff restates and realleges the allegations of paragraphs 1-126 as if fully set forth herein.

128.    Through the foregoing conduct, Defendants intentionally and improperly interfered with Interlink's prospective sales to customers.

129.    By deceiving Amazon and Groupon into believing that their illegal showerheads comply with the law, Defendants gained access to those online marketplaces and unlawfully prevented Interlink from making sales to customers as to which it had a reasonable expectation of economic benefit, including without limitation Groupon.

130.    Defendants knew or should have known of Interlink's expected economic benefit.

131.    It is highly likely that, absent Defendants' wrongful and deceptive conduct, Interlink would have made the sales that Defendants made.

132.    Interlink has been damaged by Defendants' interference in the form of lost sales and goodwill.

133.    Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, damages, punitive damages and any other relief the court deems just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

I.      That Defendants, their officers, agents, servants, employees, attorneys, privies, subsidiaries, divisions, successors and assigns, and all persons and organizations in active concert, participation or combination with any of the foregoing be permanently enjoined from and/or Ordered to:

A. Cease making or employing any false or misleading statements or omissions concerning Defendants' showerheads;

B. Immediately take all steps necessary to remove Defendants' showerheads that do not comply with applicable statutes and regulations from the market, including Amazon.com and Groupon.com, and otherwise stop selling showerheads that do not comply with applicable laws;

C. Cease selling products on Amazon.com under listings reflecting deceptive product ratings;

D. Cease using the AQUAFLOW trademark or any other mark that is confusingly similar to any Interlink trademark;

E.   Immediately cease and refrain from utilizing any product descriptions, imagery, promotional materials, product designs or any other product related elements that copy, mimic, or are confusingly similar to the trade dress employed by Interlink in connection with its products and product promotional materials;

F.   Cease and refrain from representing or suggesting that their products are the same as Interlink's products;

G.   Cease selling showerhead products for a period sufficient to correct for any gains in market share and goodwill attributable to the conduct on which Interlink's claims are based.

II.     That Plaintiffs obtain the following relief:

A.   An accounting and disgorgement of all profits Defendants have gained through the sale of showerheads through Amazon and anywhere else in competition with Interlink;

B.   Compensatory damages in an amount not less than $2.2 million;

C.   Treble damages;

D.   Reasonable attorneys' fees and costs;

E.   Punitive damages in an amount not less than $12 million; and

F.   Any other relief in Interlink's favor that the court deems just and proper.

Dated: September 28, 2015                Respectfully submitted,

                                         The Law Office Of
                                         JASON B. LATTIMORE, ESQ. LLC

                                         By  s/ Jason B. Lattimore
                                             Jason B. Lattimore
                                             55 Madison Avenue, Suite 400

27

Morristown, NJ 07960
Telephone: (973) 998-7477
Facsimile:  (973) 264-1159

*Attorneys for Plaintiff*
*Interlink International Products, Inc.*

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable by

jury.

Dated: September 28, 2015                    Respectfully submitted,

The Law Office Of
JASON B. LATTIMORE, ESQ. LLC

By  s/ Jason B. Lattimore
    Jason B. Lattimore
    55 Madison Avenue, Suite 400
    Morristown, NJ 07960
    Telephone: (973) 998-7477
    Facsimile:  (973) 264-1159

    *Attorneys for Plaintiff*
    *Interlink International Products, Inc.*

28