<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERLINK PRODUCTS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> F & W TRADING LLC, et al., <br><br> Defendants. | Civil Action No. 15-1340 (MAS) (DEA) <br><br> **OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on two motions. Plaintiff/ Counterclaim Defendant Interlink Products International, Inc. ("Interlink") moves to dismiss Defendant/ Counterclaim Plaintiff F & W Trading LLC's ("F&W") Amended Counterclaims (ECF No. 23) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 25.) Additionally, Defendants F&W and Gideon Products, LLC (collectively, "Defendants") move to dismiss Interlink's Third Amended Complaint (ECF No. 28) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 30.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Interlink's motion to dismiss is granted in part and denied in part, and Defendants' motion to dismiss is granted in part and denied in part.

## I.     <u>Background</u>

This is a commercial dispute between two competitors that manufacture and distribute showerheads. Interlink originally brought this action against F&W for false advertising, trademark

infringement, and unfair competition.  Now, in its Third Amended Complaint, Interlink alleges that "[t]his case arises out of Defendants' wide-sweeping unfair and deceptive competitive practices and their infringement of Interlink's trade dress and trademarks."  (Third Am. Compl. ¶ 7, ECF No. 28.)  Specifically, Interlink alleges that it is a research and development company specializing in the development, manufacturing, and marketing of high quality healthcare products, including showerheads.  (*Id.* ¶ 8.)   Interlink alleges that it owns or is the exclusive licensee of several federally registered trademarks for its showerhead brands, including AQUASPA®, AQUASTORM®, AQUADANCE®, and SPIRALFLO®.  (*Id.* ¶ 10.)  Interlink sells its products through websites, including Amazon.com ("Amazon") and Groupon.com ("Groupon"), and through major retailers, including Wal-Mart and Bed Bath & Beyond.  (*Id.* ¶ 9.)  Additionally, Interlink alleges that Defendants compete directly with it for sales of showerheads to online consumers.  (*Id.* ¶ 13.)

In the Third Amended Complaint, Interlink alleges that Defendants sell illegal products on Amazon and Groupon by falsely representing to Amazon and Groupon that their products comply with all applicable laws when Defendants' showerheads do not comply with the flow rate and marking requirements under the Energy Policy Act, 42 U.S.C. §§ 6291-6309, and the regulations promulgated pursuant thereto.  (*Id.* ¶¶ 14-46.)  Additionally, Interlink alleges that Defendants "set out to copy Interlink's successful trademark, product designs and product descriptions in order to trade on the goodwill established by Interlink, pass off their goods as Interlink products, and otherwise unfairly compete with Interlink."  (*Id.* ¶ 47.)  Specifically, Interlink alleges that Defendants: (1) "copied the images and product descriptions for Interlink's showerheads and then used them to sell Defendants' products"; (2) "adopted the trademark AQUAFLOW for their showerheads" to closely resemble Interlink's marks; (3) "falsely mark[ed] . . . their AQUAFLOW

2

products with the indicia of federal trademark registration (the ® symbol) when, in fact, AQUAFLOW is not a federally registered trademark"; and (4) "mimic[ed] or closely resemble[d] the listings, packaging and promotional materials for Interlink's products." (*Id.* ¶¶ 49-56.) Furthermore, Interlink alleges that Defendants copied their trade dress, which includes:

> (1) [t]he use of circular pictures arranged in a vertical column showing the various function modes of the showerheads, together with the terminology used to describe the functions and the font and positioning of the function descriptions beneath the pictures;
>
> (2) photographs of Interlink's products;
>
> (3) the look, feel and style of the presentation of product images;
>
> (4) the non-functional aspects of the design of the products, specifically the shape of the shower handle, head and shower jet design . . .; and
>
> (5) the trademarks used in connection with the products.

(*Id.* ¶ 57.)

Moreover, Interlink alleges that Defendants used excessive professional product reviewers to inflate their product ratings and rankings on Amazon. (*Id.* ¶¶ 70-80.) Additionally, Interlink alleges that Defendants deceive customers regarding the installation of their dual showerheads by advertising that installation requires "absolutely no tools," but the product instructions state to use a "wrench or pliers to tighten all connections." (*Id.* ¶¶ 81-88.) Based on these facts, Interlink asserts eight counts against Defendants: (1) false advertising, 15 U.S.C. § 1125(a); (2) false advertising/ deceptive practices, N.J.S.A. 56:8-2; (3) federal trademark infringement, 15 U.S.C. § 1114; (4) federal unfair competition, 15 U.S.C. § 1125(a); (5) federal trade dress infringement, 15 U.S.C. § 1125(a); (6) unfair competition, N.J.S.A. 56:4-1; (7) common law unfair competition; and (8) tortious interference with prospective economic advantage. Interlink seeks an injunction,

an accounting and disgorgement of all profits, compensatory damages of no less than $2.2 million, treble damages, reasonable attorneys' fees and costs, and punitive damages of no less than $12 million.

Defendant F&W also asserts Amended Counterclaims against Interlink.   (Am. Counterclaims, ECF No. 23.)   In its Amended Counterclaims, F&W alleges that many of Interlink's dual showerheads do not comply with the Energy Policy Act's flow rate requirements or the U.S. Department of Energy's Showerhead Enforcement Guidance of March 4, 2011.  (*Id.* ¶¶ 5-14.)   Specifically, F&W alleges that it "purchased and tested an Interlink Model 1141 AquaDance Drencher 3-Setting 8-inch Curved Square Rainfall Showerhead with Waterfall mode" and it did not contain a water flow regulator even though Interlink represented that the product complied with the Energy Policy Act. (*Id.* ¶ 15.)  Additionally, F&W alleges that it purchased and tested other Interlink models that also represented that they complied with the Energy Policy Act but actually put out more water than the Energy Policy Act limit. (*Id.* ¶¶ 16-19.)  F&W also alleges that Interlink's products violate the Energy Policy Act because they are not marked with the country of origin.  (*Id.* ¶ 20.)  Furthermore, F&W alleges that the instruction manuals that come with Interlink's showerheads teach users how to remove flow rate regulators. (*Id.* ¶¶ 31-38.)  F&W additionally alleges that Interlink does not comply with Amazon's Product Image Requirements because the backgrounds are supposed to be pure white but Interlink's showerhead product images are dark.  (*Id.* 39-43.) Based on these facts, F&W asserts four counterclaims against Interlink: (1) false advertising, 11 U.S.C. § 1125(a); (2) false advertising/ deceptive practices, N.J.S.A. 56:8-2; (3) common law unfair competition; and (4) tortious interference with prospective economic advantage.  F&W seeks an injunction, an accounting, treble damages, and punitive damages.

## II.    Legal Standard

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  The court, however, must disregard any conclusory allegations proffered in the complaint.  *Id.*  Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III.    Analysis

### A.    Motion to Dismiss Amended Counterclaims

In its Amended Counterclaims, F&W alleges that Interlink: (1) teaches users, through its instruction manual, how to make its showerheads non-compliant with the Energy Policy Act; (2) uses images with dark backgrounds as opposed to white backgrounds in violation of Amazon's Product Image Requirements; (3) falsely represents that its showerheads comply with the Energy

Policy Act's maximum flow rate; and (4) does not list the country of origin on its products. Interlink moves to dismiss all four counts of F&W's Amended Counterclaims based on these allegations.

1.    Count One – False Advertising (15 U.S.C. § 1125(a))

In Count One, F&W asserts that Interlink made false and misleading statements of fact in its commercial advertising or promotion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a). "Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) . . . creates a cause of action for any false description or representation of a product. This proscription extends to misleading descriptions or representations." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 921 (3d Cir. 1990).  To state a false advertising claim under the Lanham Act, a plaintiff must allege:

1)  that the defendant has made false or misleading statements as to his own product [or another's];

2)  that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

3)  that the deception is material in that it is likely to influence purchasing decisions;

4)  that the advertised goods traveled in interstate commerce; and

5)  that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000).

a.    *Product Instructions*

F&W argues that the product instructions constitute false advertising because they "serve the purpose of influencing the customer who purchased the item to continue purchasing Interlink

showerhead products and to also influence other potential customers who become aware of them through contact with the initial purchaser." (Defs.' Opp'n Br. 3, ECF No. 26.)

In support of its motion, Interlink cites *Gillette Co. v. Norelco Consumer Products Co.* for the proposition that product instructions do not constitute advertising or promotion for a Lanham Act claim. (Pl.'s Moving Br. 5 (citing *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 135 (D. Mass. 1996)), ECF No. 25.) In *Gillette*, the District of Massachusetts, in interpreting the phrase "advertising or promotion" in the Lanham Act, found that:

> Advertising or promotion implies that the statements are made to influence a consumer in his or her choice to purchase a product. Statements made inside the product's packaging, available to consumers only after the purchase has been made, do not affect the choice to purchase, that choice having been made at an earlier point.

*Gillette Co.*, 946 F. Supp. at 135. Based on this reasoning, the court in *Gillette* held that the packaging inserts at issue were not "commercial advertising or promotion as the phrase is used in the Lanham Act." *Id.*; *see also Marcyan v. Nissen Corp.*, 578 F. Supp. 485, 507 (N.D. Ind. 1982), *aff'd sub nom.*, *Marcyan v. Marcy Gymnasium Equip. Co.*, 725 F.2d 687 (7th Cir. 1983) (holding that a user manual that is provided to purchaser of product is not an advertising under the Lanham Act). Although not binding on this Court, *Gillette* is persuasive and F&W has not directed this Court to any binding precedent that it must follow. Accordingly, the Court grants Interlink's motion to dismiss Count One based on the product instructions.

### b.    Product Image Backgrounds

F&W states that it does not dispute that the allegations regarding the product image backgrounds are not the basis of the Lanham Act claim. (Defs.' Opp'n Br. 4.) Accordingly, the Court grants Interlink's motion to dismiss Count One based on the product image backgrounds.

c.      *False Representations of Compliance with Flow Rate*

Interlink argues that Count One, based on the allegations of Interlink's violation of the Energy Policy Act, should be dismissed because F&W has "not pled facts sufficient to support the inference that [it has] suffered or [is] likely to suffer any harm as a result of alleged nonconformance with the DOE enforcement guidance." (Pl.'s Moving Br. 9.)   Specifically, Interlink argues that because F&W does not plead "that [it] actually compl[ies] or ha[s] complied with the standard [it] seek[s] to impose" on Interlink, F&W does not have a plausible claim for damages or harm. (*Id.*) In opposition, F&W states that Interlink has failed to cite any case law in support of its argument. (Defs.' Opp'n Br. 6.) Additionally, F&W directs this Court to its allegations in the Counterclaims that provide: "Interlink's false statements that its showerheads put out no more than 2.5 gpm at 80 p.s.i. of water pressure are material to consumers, many of whom would not have purchased Interlink's showerheads if they had known that these representations were false." (*Id.* (citing Defs.' Counterclaim 23).)

The Court agrees with F&W. If, as alleged, Interlink falsely represented that its products complied with the Energy Policy Act, and consumers purchased Interlink's products based on those representations, F&W may have suffered damages due to the allegedly false representations because consumers chose Interlink's product over F&W's based on false representations. Therefore, at this stage in the litigation, F&W has pled sufficient facts to base its claims on Interlink's alleged false representations of compliance with the Energy Policy Act.

Additionally, Interlink moves to dismiss Count One to the extent it is founded on alleged misrepresentations because the Lanham Act requires that a party identify the allegedly false statements with particularity, consistent with the requirements of Rule 9(b). (Pl.'s Moving Br. 15-16.) In opposition, F&W argues that an intermediate pleading standard applies to Lanham Act

claims, and Interlink knows exactly which misrepresentations F&W refers to in its Counterclaims. (Defs.' Opp'n Br. 10-11.)   "In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense." *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549, 1556 (E.D. Pa. 1985) (regarding Lanham Act claim).   After review of the Counterclaims, the Court finds that F&W has pled sufficient factual allegations to allow Interlink to defend those allegations.   Accordingly, the Court denies Interlink's motion to dismiss Count One based on its alleged false representation of compliance with flow rate regulations.

### 2.    Count Two – False Advertising/Deceptive Practices (N.J.S.A. 56:8-2)

In Count Two, F&W asserts that Interlink "used and employed unconscionable commercial practices, deception, fraud, and misrepresentations concerning the nature of its showerheads and has knowingly misrepresented or concealed material facts concerning the nature of its showerheads with the intent that potential purchasers rely upon such misrepresentations or concealment" in violation of the New Jersey Consumer Fraud Act.   (Defs.' Counterclaims ¶ 51.) Based on the Court's reasoning, *infra* III. B. 2., in regards to F&W's motion to dismiss Interlink's New Jersey Consumer Fraud Act claim for lack of standing, the Court also grants Interlink's motion to dismiss F&W's counterclaim for violation of the New Jersey Consumer Fraud Act.

### 3.    Count Three – Common Law Unfair Competition

In Count Three, F&W asserts a counterclaim for unfair competition under New Jersey common law.   (Defs.' Counterclaims ¶¶ 54-59.)   New Jersey's "law of unfair competition is an amorphous area of jurisprudence." *N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427 (Ch. Div. 1976), *aff'd*, 160 N.J. Super. 81 (App. Div. 1978).   "It knows no

clear boundaries. . . . The concept is as flexible and elastic as the evolving standards of commercial morality demand [and] . . . . [t]he judicial tendency is to promote and advocate higher ethical standards in the business world." *Id.*; *see also Am. Shops v. Am. Fashion Shops of Journal Square*, 13 N.J. Super. 416, 421 (App. Div. 1951) ("No catalogue exists of all acts which constitute unfair competition. No prophet has undertaken to foretell what acts will be held to constitute unfair competition in the future, because equity broadly concerns itself with the suppression of injurious deception and fraud whatever the means by which they are wrongfully accomplished."). "[T]he essence of unfair competition is fair play." *Columbia Broad. Sys. v. Melody Recordings*, 134 N.J. Super. 368, 376 (App. Div. 1975). "The judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair." *Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87, 92 (App. Div. 2001). "Furthermore, unfair competition claims under New Jersey statutory and common law generally parallel those under § 43(a) of the Lanham Act." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 454 (D.N.J. 2009). Accordingly, to the extent this Court granted Interlink's motion to dismiss Count One of F&W's Counterclaims, the Court also grants Interlink's motion to dismiss Count Three.

    4.    <u>Count Four – Tortious Interference with Prospective Economic Advantage</u>

    In Count Four, F&W asserts a counterclaim for tortious interference due to Interlink's intentional and improper interference with F&W's prospective customers. (Defs.' Counterclaims ¶¶ 60-64.) "Under New Jersey law, the elements of a claim for tortious interference with prospective business advantage are as follows: 1) a prospective economic relationship from which the plaintiff has a reasonable expectation of gain; 2) intentional and unjustifiable interference with that expectation, and 3) a causative relationship between the interference and the loss of the prospective gain." *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 281 (3d Cir.

1995) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989)). "In order to prevail on a claim for tortious interference with a prospective economic advantage, the plaintiff must prove that the defendant acted with malice." *Herbert v. Newton Mem'l Hosp.*, 933 F. Supp. 1222, 1229 (D.N.J. 1996), *aff'd*, 116 F.3d 468 (3d Cir. 1997). "Malice, in the context of a tortious interference claim, is not used in its literal sense to mean defendants' ill will or spite toward the plaintiff, but rather it means an intentional doing of a wrongful act without justification or excuse." *Id.* at 1229-30. "While the wrongful act need not be illegal per se to establish tort liability, . . . it nevertheless must be 'transgressive of generally accepted standards of common morality or law.'" *Id.* (quoting *Assoc. Grp. Life, Inc. v. Catholic War Veterans*, 120 N.J. Super. 85, 98 (App. Div. 1971)).

First, F&W merely asserts the same arguments it made in support of its unfair competition claim, in regards to the product instructions, to support its tortious interference claim. As the Court has granted Interlink's motion to dismiss the unfair competition claims on the product instruction allegations, it also grants Interlink's motion to dismiss Count Four of those grounds.

Next, with respect to the product image backgrounds, F&W argues that Interlink "purposefully and intentionally contravenes the Amazon.com image requirement . . . to unfairly take legitimate customers away from [F&W]." (Defs.' Opp'n Br. 10.)   For purposes of tortious interference, however, when "a loss occurs by reason of lawful competition, however sharp, the loss is one for which the law affords no redress." *Melveney v. McCrane*, 138 N.J. Super. 456, 462 (App. Div. 1976); *see also Raul Int'l Corp. v. Sealed Power Corp.*, 586 F. Supp. 349, 358 (D.N.J. 1984). Furthermore, F&W provides no support for its argument that the violation of a website's image requirements gives a third-party user of the website a cause of action for unlawful competition. Interlink's compliance with Amazon's image requirements is a matter between

Amazon.com and Interlink.  *See, e.g., Lexington Nat'l Ins. Corp. v. Ranger Ins. Co.*, 326 F.3d 416 (3d Cir. 2003) (denied theory of tort liability as extending New Jersey law too far based on a theory of a competitor unlawfully reducing its costs by underpaying its taxes) .  The Court, even accepting F&W's allegations as true, will not extend tort liability to the facts of this case without citation to persuasive legal authority by F&W.  Thus, the Court grants Interlink's motion to dismiss Count Four with respect to the product image backgrounds.

Last, with respect to the allegations of false representation of compliance with flow rate, Interlink repeats its argument from the previous counts which this Court already denied.  Thus, F&W's motion to dismiss Count Four based on its allegedly false representation of compliance with the flow rate is denied.

### 5.   Country of Origin Designation

Additionally, Interlink argues that the Court should dismiss F&W's allegation that some of Interlink's showerheads are not marked with the country of origin in violation of 19 C.F.R. §134.  Specifically, without any citation to case law, Interlink argues that because F&W admitted in its Answer to Interlink's Second Amended Complaint,[1] that at least some of F&W's showerheads are not marked with the country of origin, F&W cannot now claim that it was damaged by the same alleged conduct.  (Pl.'s Moving Br. 18.)  In opposition, F&W argues, again without any citation to case law, that the admission concerned past practices and it should be allowed to assert a claim now that it is in full compliance and Interlink is not.  (Defs.' Opp'n Br. 11.)  At this juncture, because Interlink has not provided the Court with any case law that supports

---

[1] The Second Amended Complaint however is not the operative pleading here, as Interlink has filed a Third Amended Complaint.

dismissal on this basis, the Court denies Interlink's motion to dismiss based on F&W's claims regarding the country of origin designation.

Accordingly, Interlink's motion is granted in part and denied in part. All Counterclaims based on the product instructions and product image background are dismissed and Count Two is dismissed with prejudice.

### B.   Motion to Dismiss Third Amended Complaint

In its Third Amended Complaint, Interlink alleges that Defendants have: (1) "represented in their advertising and promotional materials that their dual showerheads require 'absolutely no tools' to install when, in fact, the instructions provided with the showerheads clearly indicate that tools are required"; (2) used deceptive tactics in the form of professional reviewers to enhance their online product ratings; (3) "misrepresented the nature and qualities of their products by using images of Interlink's products"; (4) sold products without regulating the water flow; and (5) adopted "a trademark that is confusingly similar to federally registered marks used by Interlink" and falsely indicated that their trademark is federally registered. (Third Am. Compl. ¶ 7.) F&W moves to dismiss all eight counts of the Third Amended Complaint based on these allegations.

#### 1.   Count One – False Advertising (15 U.S.C. § 1125(a))

In Count One, Interlink alleges five separate false or misleading statements F&W made that are "literally false" and constitute false advertising under the Lanham Act. (Third Am. Compl. ¶¶ 89-95.) Those five factual basis are: (1) misrepresentation with respect to legality of product; (2) misrepresentation that F&W's products were Interlink's products or of the same quality as Interlink's products; (3) misrepresentation that AQUAFLOW is a registered trademark; (4) use of

professional reviewers; and (5) misrepresentation that no tools were required for installation.  (*Id.* ¶ 90.)  Defendants move to dismiss Count One on all five bases.

As stated above, to state a false advertising claim under the Lanham Act, a plaintiff must allege:

1) that the defendant has made false or misleading statements as to his own product [or another's];

2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

3) that the deception is material in that it is likely to influence purchasing decisions;

4) that the advertised goods traveled in interstate commerce; and

5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert Co.*, 204 F.3d at 91-92.

### a.     Alleged Misrepresentation of Illegal Showerheads

With respect to Interlink's allegation that Defendants' showerheads fail to comply with federal law and regulations, Defendants argue that because Interlink failed to allege that Defendants represent in their advertisement that their products comply with any of the federal laws or regulations that Interlink cites, this claim fails based on the reasoning in *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998).  Interlink does not oppose dismissal of this allegation for its false advertising claim.  Therefore, Interlink's allegation of Defendants' alleged misrepresentation of the legality of its products in support of Count One is dismissed.

### b.     Alleged Misrepresentation that Defendants' Products Were, or the Same as, Interlink's

With respect to Interlink's allegation that Defendants' use of Interlink's pictures and product descriptions constitute false advertising, Defendants argue that the pictures used show the

different functions of the showerhead and Interlink has not alleged that either of these functions are not available in Defendants' products or that Defendants' products are inferior, such that the use of the pictures would constitute false advertising under *L'Aiglon Apparel v. Lana Lobell, Inc.*, 214 F.2d 649 (3d Cir. 1954). (Defs.' Moving Br. 5-6, ECF No. 30.) In opposition, Interlink argues that its false advertising claim on this basis is not limited to the pictures displaying the functions, but that Defendants are misrepresenting that their product is in fact Interlink's product. (Pl.'s Opp'n Br. 14-15.) Additionally, Interlink argues that the allegations of the Third Amended Complaint adequately allege that the nature and quality of the products are different. (*Id.*)

"It is well established that a person's use of a picture or other depiction of a competitor's product to sell his own product violates [Section] 43(a)." *Upjohn Co. v. Riahom Corp.*, 641 F. Supp. 1209, 1222 (D. Del. 1986) (citing *L'Aiglon Apparel, Inc.*, 214 F.2d at 649). "In such situations, unfair competition exists because the defendant unfairly seeks to trade on the plaintiff's reputation and goodwill by representing plaintiff's product as his own or by creating the false impression that some association exists between the two products or their sources." *Id.* At the motion to dismiss stage, Interlink's allegations, taken as true, state a cognizable claim under Section 43(a) of the Lanham Act based on F&W's use of Interlink's pictures and descriptions to either misrepresent that F&W's products are Interlink's or that they are of the same nature and quality. Defendants' motion to dismiss is denied on this basis.

c.   *Alleged Misrepresentation of Registered Trademark Symbol*

With respect to Interlink's allegation that Defendants misrepresent that AQUAFLOW is a registered trademark, Defendants state that the symbol was used by mistake and that Defendants have ceased using the trademark symbol. (Defs.' Moving Br. 7.) Additionally, Defendants argue that there is no case law in this Circuit that addresses such a claim, and Interlink failed to allege

any facts to support a claim for damages.  (*Id.*)  In opposition, Interlink argues, based on the Southern District of New York decision in *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 460 (S.D.N.Y. 2012), that the false use of the trademark symbol can support a claim for false advertising.  (Pl.'s Opp'n Br. 16.)

The "use of . . . the ® adjacent a mark not federally registered is . . . a form of false advertising which may result in serious repercussions." 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 19:146 (4th ed. 2011) (citing *Sports Auth., Inc. v. Abercrombie & Fitch, Inc.*, 965 F. Supp. 925, 933 (E.D. Mich. 1997) (placement of the "U.S. PAT. OFF." notice near non-registered mark in a composite designation might constitute false advertising under Lanham Act § 43(a))).  Accordingly, Interlink's allegations regarding F&W's false use of the trademark symbol next to AQUAFLOW is sufficient to plead a plausible claim for false advertising.  Defendants' motion to dismiss is denied on this basis.

### d.    Alleged Manipulation of Product Reviews

With respect to Interlink's allegation that Defendants' manipulation of product reviews through the excessive use of professional reviewers constitutes false advertising, Defendants argue that Interlink's actual complaint is with Amazon's product review reporting process and, otherwise, Defendants have not made a false statement of fact in commercial advertising to support Interlink's claim.  (Defs.' Moving Br. 9-12.)  In opposition, Interlink argues that its false advertising claim is "concerned only with [Defendants'] manipulation of numerical product ratings through the excessive use of professional reviewers."  (Pl.'s Opp'n Br. 5-6.)  Additionally, Interlink argues that it has pled sufficient facts to support a claim of false advertising based on Defendants' rating manipulation under both literal falsity and implied falsity grounds and under either direct or contributory liability.  (*Id.* 6-10.)

16

In the Third Amended Complaint, Interlink alleges that Defendants' "core business strategy is founded on taking business from competitors though massive continuous ratings manipulation [by] . . . sending excessive quantities of free samples of products to professional reviewers so that the Amazon reviews for those products are flooded with professional reviews" and "professional reviews are inherently biased and tend to favor the seller." (Third Am. Compl. ¶¶ 73-74.) Additionally, Interlink alleges that "[w]hen not abused, there is nothing wrong with the use of professional product reviewers." (*Id.* ¶ 72.)

Here, Defendants have not supported their argument for dismissal with citation to any persuasive legal authority and the Court finds that Interlink has pled sufficient facts at this stage to state a claim for false advertising based on the alleged business practice of using professional reviewers to drive up product ratings. The Lanham Act makes statements that are literally false actionable. "A 'literally false' message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002) (internal quotation marks omitted). As alleged, Defendants purposefully drive up Amazon product ratings by enlisting inherently biased professional reviewers intending for consumers to rely on the misleading heightened reviews when selecting a product for purchase. The Court finds these allegations sufficient to state a claim on implied falsity grounds. Accordingly, Defendants' motion to dismiss is denied on this basis.

### e.    *Alleged Misrepresentation of No Tools Required Installation*

With respect to Interlink's allegation that Defendants' dual showerhead requires tools for installation even though it is advertised as "no tools required," Defendants argue that Interlink's

claim for literal falsity fails because Interlink has not alleged that Defendants' showerhead cannot be installed without tools. (Defs.' Moving Br. 12.) In opposition, Interlink argues that its allegations in the Third Amended Complaint support a plausible inference that tools are required to install Defendants' dual showerhead products and that the instructions confirm that tools are required. (Pl.'s Opp'n Br. 3.) Interlink argues that these allegations are sufficient to state a plausible claim. (*Id.*)

In the Third Amended Complaint, Interlink alleges that: (1) Defendants advertise that the installation of their dual showerhead requires "absolutely no tools"; (2) this statement is "literally false"; and (3) the product instructions "clearly instruct the purchasers to use" tools. (Third Am. Compl. ¶¶ 82-84.) Based on these allegations, and making all inferences in favor of Interlink, it has pled a plausible claim for relief. Accordingly, Defendants' motion to dismiss is denied on this basis.

### 2.   Count Two - False Advertising/Deceptive Practices (N.J.S.A. 56:8-2)

In Count Two, Interlink alleges that it is a "purchaser" and "direct competitor," Defendants used unconscionable commercial practices in connection with the sale and advertisement of their showerheads, and as a result Interlink has suffered damages including the purchase price of the product, lost sales, and lost market share. (Third Am. Compl. ¶¶ 96-101.) Defendants move to dismiss Count Two, Interlink's claim under the New Jersey Consumer Fraud Act, arguing that Interlink lacks standing as a competitor to assert such a claim. (Defs.' Moving Br. 12-13.) In opposition, Interlink argues that there is a split in this District as to whether a competitor has standing to assert a claim under the New Jersey Consumer Fraud Act, and, in any case, Defendants are judicially estopped from making that argument because they asserted a similar Counterclaim. (Pl.'s Opp'n Br. 17-21.)

The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -181, "provides relief to consumers from 'fraudulent practices in the market place.'" *Lee v. Carter-Reed Co.*, 203 N.J. 496, 521 (2010) (quoting *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11 (2004)). To establish a cause of action under the New Jersey Consumer Fraud Act, a consumer must plead "(1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011); *see also Lee*, 203 N.J. at 521.

The Court agrees with the Honorable Freda L. Wolfson, U.S.D.J.'s holding in *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, and finds that "the NJCFA is not intended to protect competitors such as Plaintiff that do not suffer a consumer-like injury." No. 10-453, 2010 WL 5239238, at *10-11 (D.N.J. Dec. 16, 2010). In *Church & Dwight*, Judge Wolfson reasoned:

> While there are no New Jersey state court cases that directly address this issue, the Court finds persuasive recent district court cases that have rejected the notion that competitors, direct or otherwise, suffering non-consumer like injuries have standing to sue under the NJCFA. In *Trans USA Products, Inc. v. Howard Berger Co., Inc.*, No. 07-5924, 2008 WL 3154753 (D.N.J. Aug. 4, 2008), the court explained: "Plaintiff does not have standing to bring a cause of action under NJCFA. Plaintiff bases the NJCFA claim on allegations of unfair competition and Plaintiff's status as a competitor to Defendants. Importantly, Plaintiff is not a direct purchaser of the wiring devices alleged to bear fraudulent UL marks and, has not used or diminished those goods. Plaintiff does not assert that it has been "victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Daaleman*, supra, 77 N.J. at 271, 390 A.2d 566. For those reasons, the Court finds that the NJCFA is not intended to protect competitors such as Plaintiff that do not suffer a consumer-like injury. *Id.* at *20.

*Id.* Here, Interlink and Defendants are competitors and neither alleges suffering any consumer oriented injuries. Instead, each only purchased the others' product in support of this litigation and

already under the assumption that the other's product contained some type of misrepresentation. Thus, the Court finds that both parties lack standing to sue under the New Jersey Consumer Fraud Act. Accordingly, Defendants' motion to dismiss Count Two is granted.

3.      Count Three – Federal Trademark Infringement (15 U.S.C. § 1114)

In Count Three, Interlink alleges that Defendants have used the mark AQUAFLOW which is confusingly similar to Interlink's federally registered marks in violation of 15 U.S.C. § 1114. (Third Am. Compl. ¶¶ 102-07.)   In support of dismissal of this claim, Defendants argue that Interlink has pled only conclusory statements that Defendants have used marks confusingly similar to the registered marks and, in any regard, when AQUAFLOW is compared with Interlink's marks, AquaSpa and SpiralFlo, there is no plausible claim made for trademark infringement.   (Defs.' Moving Br. 13-15.)   In opposition, Interlink argues that the likelihood of confusion is a fact issue that is not appropriate to decide on a motion to dismiss.   (Pl.'s Opp'n Br. 22-24.)

"To prove trademark infringement, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff[2]; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994). "Several factors must be evaluated to determine whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the similarity of the products sold; (4) the marketing and retailing channels used; (5) the defendant's intent in adopting the mark;

---

[2] Interlink also argues that it has standing to sue as the exclusive licensee for "AQUASPA®" and "AQUADANCE®." (Pl.'s Opp'n Br. 21-22.)   The Court will not address Defendants' motion on standing grounds with respect to Count Three because Defendants stated, for the purposes of the motion to dismiss, that they were not contesting the validity of the marks and provided no support besides attaching copies of the certificates of the trademark registration to their motion, as to why Interlink lacks standing.

(6) the sophistication of the buyers; and (7) actual confusion." *Eagles Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 859 (E.D. Pa. 1985) (citing *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 116 (2d Cir. 1984); *AMF, Inc. v. Steekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)).   At the pleading stage, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff.  "Against this procedural background, and buttressing it, lies the rule that generally speaking likelihood of confusion is a question of fact. . . . [and] the plaintiff is not required to prove the likelihood of confusion at the pleading stage." *Id.* (citing *Universal City Studios, Inc.*, 746 F.2d at 116; 2 McCarthy, *Trademarks and Unfair Competition*, § 23:22 at 107, § 32:37 at 745 (2d ed. 1984)); *CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 406 (D.N.J. 2010) ("The third element required to prove infringement or unfair competition—likelihood of confusion—is a question of fact.").  Here, Interlink has sufficiently pled enough facts, taken as true, that support an inference of the likelihood of confusion, and Defendants' argument is better left for a jury to decide.  Accordingly, Defendants' motion to dismiss Count Three is denied.

### 4.   Count Four – Federal Unfair Competition (15 U.S.C. § 1125(a))

In Count Four, Interlink alleges that Defendants' use of a trademark that is confusingly similar to Interlink's marks is likely to cause confusion and that Defendants are attempting to pass off their products as Interlink's in violation of 15 U.S.C. § 1125(a).  (Third Am. Compl. ¶¶ 108-14.)  Defendants move to dismiss Count Four based on the same arguments that they made in support of dismissal of Counts One[3] and Three.  (Defs.' Moving Br. 16.)  "The Third Circuit has stated that it 'measure[s] federal trademark infringement [under Section 32], 15 U.S.C. § 1114, and federal unfair competition [under Section 43], 15 U.S.C. § 1125(a)(1)(A), by identical

---

[3] Count One was granted in party only to the extent the allegation was unopposed.

standards.'" *CSC Holdings, LLC*, 731 F. Supp. 2d at 405 (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)).   The Court already denied Defendants' motion to dismiss with respect to Counts One and Three, and therefore, denies Defendants' motion with respect to Count Four.

    5. <u>Count Five – Federal Trade Dress Infringement (15 U.S.C. § 1125(a))</u>

   In Count Five, Interlink alleges that Defendants' copying of Interlink's trade dress and Defendants' false designation of origin causes confusion and a misleading impression that Defendants' showerheads are associated with Interlink.   (Third Am. Compl. ¶¶ 115-20.) Defendants argue that Count Five "should be dismissed as it is based on allegations of trade dress infringement of nothing more than a combination of non-distinctive product designs and marketing ideas with no facts alleged to even support a plausible claim that anything about the trade dress has acquired secondary meaning." (Defs.' Moving Br. 20.)   In opposition, Interlink argues that Defendants' factual arguments "are not appropriate for resolution on a motion to dismiss." (Pl.'s Opp'n Br. 26.)

   "To establish trade dress infringement under the Lanham Act, a plaintiff must prove that (1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007).   "In addition to satisfying these three elements, it is the plaintiff's duty to 'articulat[e] the specific elements which comprise its distinct dress.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) (quoting *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).   "[T]he alleged trade dress must create *some* visual impression on consumers."   *Id.*   Trade dress, however, which is clearly

functional is not protectable. "A functional feature is one that is 'essential to the use or purpose of the article,' 'affects the cost or quality of the article,' or one that, if kept from competitors, would put them at a 'significant non-reputation-related disadvantage.'" *Id.* at 310-11 (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001)). "By contrast, a feature is nonfunctional where it 'is unrelated to the consumer demand . . . and serves merely to identify the source of the product' or business." *Id.* at 311 (*Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1986)).

In the Third Amended Complaint, Interlink alleges that the elements of its trade dress are:

(1) The use of circular pictures arranged in a vertical column showing the various function modes of the showerheads, together with the terminology used to describe the functions and the font and positioning of the function descriptions beneath the pictures;

(2) photographs of Interlink's products;

(3) the look, feel and style of the presentation of product images;

(4) the non-functional aspects of the design of the products, specifically the shape of the shower handle, head and shower jet design . . .; and

(5) the trademarks used in connection with the products.

(Third Am. Compl. ¶ 57.) Here, Interlink has adequately alleged non-functional elements of its alleged trade dress for which it seeks protection. Specifically, the package design's use of the circular pictures in a vertical column with certain fonts, words, and pictures. Additionally, Interlink's trademarks can be a part of its trade dress. Moreover, the remainder of Defendants' arguments are not appropriate on a motion to dismiss. Accordingly, Defendants' motion to dismiss Count Five is denied.

6.    Count Six – Unfair Competition (N.J.S.A. 56:4-1) and Count Seven – Common Law Unfair Competition

In Counts Six and Seven, Interlink asserts claims for unfair competition pursuant to N.J.S.A. 56:4-1 and New Jersey common law. (Third Am. Compl. ¶¶ 121-26.) Defendants argue that to the extent this Court dismisses Count Four, Interlink's federal unfair competition claim, it should dismiss the New Jersey statutory and common law unfair competition claims. (Defs.' Moving Br. 21.) As stated *supra* III. A. 3., "unfair competition claims under New Jersey statutory and common law generally parallel those under [Section] 43(a) of the Lanham Act." *Bracco Diagnostics, Inc.*, 627 F. Supp. 2d at 454. Accordingly, as this Court denied Defendants' motion to dismiss Count Four of Interlink's Third Amended Complaint, the Court also denies Defendants' motion to dismiss Counts Six and Seven.

7.    Count Eight – Tortious Interference with Prospective Economic Advantage

In Count Eight, Interlink alleges that "[b]y deceiving Amazon and Groupon into believing that their illegal showerheads comply with the law," and through other conduct, Defendants intentionally and improperly interfered with Interlink's prospective sales to customers. (Third Am. Compl. ¶¶ 127-33.) Defendants argue that Count Eight should be dismissed because Interlink has not sufficiently alleged economic damages. (Defs.' Moving Br. 21-22.)

As this Court stated *supra* III. A. 4., in regard to F&W's tortious interference claim, to the extent the conduct complained of in support of Interlink's claim for tortious interference rests on Defendants' violation of a website's requirements or policies, those claims are dismissed as the Court will not extend tort liability that far. *See, e.g.*, *Lexington Nat'l Ins. Corp.*, 326 F.3d at 416. However, in the Third Amended Complaint, Interlink asserts other allegations that are sufficient to plead a claim for tortious interference and at this juncture the Court refrains from entirely dismissing the cause of action.

24

IV.   **Conclusion**

For the reasons set forth above, Interlink's motion to dismiss is granted in part and denied in part, and Defendants' motion to dismiss is granted in part and denied in part.  An order consistent with this Opinion will be entered.

 s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** March <u>31</u>, 2016